IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GAETINO J. SCHLOSSER,
    Plaintiff,
vs.                                                       Case No. 3:09cv500/MCR/EMT

WALTER A. McNEIL, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (doc. 1). At the time Plaintiff initiated this case he was an inmate, but he has since been released from custody (*see* doc. 9). The court granted Plaintiff leave to proceed in forma pauperis while he was a prisoner; he subsequently paid the filing fee in full (*see* docs. 4, 16). Now before the court is Plaintiff's third amended complaint, in which three Defendants are named: Yvonne Neives, a clinician at Santa Rosa Correctional Institution Annex ("SRCIA"); W.D. Rummel, M.D., the chief health coordinator at SRCIA; and L. Clark, a clinician at SRCIA (doc. 31 at 1–2).[1]

      Because Plaintiff was an inmate at the time he initiated this action, and he seeks redress from a governmental entity or officer or employee of a governmental entity, the court is required to dismiss the case at any time if it determines that the complaint is "(1) frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See* Johnson v. Hill, 965 F. Supp 1487, 1487–88 & n.2 (E.D. Va. 1997) (even though plaintiff had been released from custody and paid the

---

[1] Plaintiff named Walter A. McNeil, former secretary of the Florida Department of Corrections ("DOC"), in the original complaint (doc. 1), but he is not named as a Defendant in the complaint under review (doc. 31), although the docket—and style of this case—continue to reflect his name as a Defendant.

filing fee in full, section 1915A screening was nevertheless required because plaintiff was a prisoner at the time he filed the action, and he brought the suit in his capacity as a prisoner to advance his concerns about alleged misconduct by prison officials and injuries received during his incarceration). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). Such acceptance should not be given blindly, however; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the third amended complaint, the court concludes that dismissal of this action is warranted for failure to state a claim upon which relief may be granted.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

FACTUAL ALLEGATIONS[3]

In February 2009 Plaintiff was sentenced to a term of incarceration in the DOC, which—at the time of the events giving rise to this action—he served at the SRCIA (doc. 1 at 5).  Plaintiff alleges that prior to his incarceration he was in a serious traffic accident, which resulted in back injuries, knee injuries and pain, and rendered him disabled for Social Security purposes (*see* doc. 19, statement of facts at 1).  According to the allegations of the third amended complaint, Plaintiff saw Defendant Clinician Yvonne Neives in the SRCIA medical department on April 20, 2009 (doc. 31 at 5).[4]  Plaintiff states he showed Neives his "certified disability status paperwork," but she refused to acknowledge Plaintiff's status and stated she would determine whether Plaintiff was disabled (*id.*).  Plaintiff states Neives became aggravated when he requested a physical examination, and she did not conduct or arrange for an examination (*see id.*).  She did, however, write "a prescription for pain, and a pass not to lift, pull or push more than 50 pounds" (doc. 26, statement of facts at 2).  Plaintiff alleges that Neives' "incomplete documentation of her assessment of [Plaintiff's] health and physical capabilities" resulted in Plaintiff's placement on a prison work duty beyond his physical abilities (doc. 31 at 5).  Plaintiff states he filed a grievance regarding Neives' "deliberate disregard of [his] injuries" (*id.*).

Plaintiff further alleges that he was working at his assigned work duty on May 28, 2009, when he fell backward off a supply truck "on to his neck" and was seriously injured (doc. 31 at 5). Plaintiff states he was taken to the SRCIA medical department in a wheelchair and seen by Defendant Neives (*id.*).  Plaintiff alleges that Neives failed to acknowledge the seriousness of his new injury (*id.* at 5–6).  He also alleges Neives refused his requests to see a doctor or undergo x-ray or magnetic resonance imaging ("MRI") testing of the neck (*id.* at 6).  Plaintiff states Neives administered a shot and then sent Plaintiff to his dormitory, where he "laid . . . for 3 days and was

---

[3] Where relevant, the court includes factual allegations from Plaintiff's original, first and second amended complaints, which were submitted under the penalty of perjury (docs. 1, 19, 26).

[4] In the second amended complaint, Plaintiff alleges he saw "Ms. Kimbrell" on April 20, 2009, and she referred him to Ms. Neives, who saw Plaintiff on April 27, 2009 (doc. 26, statement of facts at 1).  Since the third amended complaint is the operative pleading in this case, if any factual discrepancy exists between an earlier complaint and the third amended complaint, the court accepts as true—for the purpose of the instant recommendation—the facts as stated in the operative pleading.

Case No. 3:09cv500/MCR/EMT

never checked on" (*id.*).  In the second amended complaint, Plaintiff further explained that—in addition to administering a shot—Neives wrote a pass totally restricting Plaintiff from work and the recreation yard from May 28 through June 1, 2009 (*see* doc. 26, statement of facts at 4–5).  Plaintiff alleges that by her conduct Neives disregarded "a serious risk of permanent damage to [his] neck caused by unattended to injuries," which resulted in pain, suffering, loss of quality of life, and now, a need for cervical surgery (doc. 31 at 6).

Plaintiff states he received a response to his grievance on June 4, 2009, from Defendant W.D. Rummel, M.D. (doc. 31 at 6).  Plaintiff states that Rummel's response was "based on" an MRI Plaintiff obtained in September 2008 and thus did not address the neck injury that occurred at SRCIA in late May 2009 (*id.*; *see also* doc. 26, statement of facts at 5).  Plaintiff alleges that his condition worsened, and he began to experience numbness in his hands and arms, intolerable pain, and an inability to walk without assistance, all of which were "outright obvious" yet Plaintiff never underwent a medical examination or x-ray or MRI testing, "no matter how many grievances [he] filed" (doc. 31 at 6).  Plaintiff alleges that Rummel's inaction "caused permanent cervical and nerve damage" for which, now, "surgery is the only option" (*id.*).  He also alleges that the "unnecessary infliction of pain and suffering . . . robbed [him] of quality of life" (*id.*).

Plaintiff next states he declared a medical emergency on June 22, 2009, due to pain (doc. 31 at 7).  He states he was taken to the medical department and briefly seen by Defendant Clinician L. Clark, and she instructed Plaintiff to wait in the waiting room so he could be seen by a physician (*id.*).  Plaintiff states a guard came into the waiting room and stated, "If I call your name, return to your dorm." (*Id.*).  Plaintiff's name was called, so he returned to his dormitory as instructed, even though he had not seen a physician and had been told by Clark to remain in the waiting room (*id.*).  Plaintiff states that after he returned to his dormitory, a guard came and told him to return to the medical department (*id.*).  When Plaintiff arrived at the medical department he was "arrested" based on an allegation by Clark that Plaintiff had disobeyed her order to remain in the waiting room (*id.*).  As a result, Plaintiff alleges, he spent seventeen days in administrative confinement with no medical attention, although he "was still suffering" (*id.*; *see also* doc. 26, statement of facts at 6–7).  More specifically, Plaintiff alleges, "They left me unattended and at serious risk of severe and permanent cervical and nerve damage." (Doc. 31 at 7).  Plaintiff states Clark subsequently "revised her report"

and changed her statement, but she continued to claim that Plaintiff had disobeyed her orders (*id.*). Thereafter, Plaintiff was sentenced to an additional thirty days in confinement, during which he states he received no medical attention (*id.* at 6–7).

Plaintiff states he was not notified of the disciplinary hearing or permitted an opportunity to present evidence showing his innocence, but he does not clarify whether he is referring to the initial, seventeen-day confinement or the additional, thirty-day confinement, or both, although he appears to refer to the latter, thirty-day confinement (*see* doc. 31 at 6–7; *see also* doc. 26, statement of facts at 6–7).[5] Additionally, Plaintiff alleges, Clark falsely charged him with disobeying orders "to punish" him for writing grievances directed toward the medical staff (*see id.* at 8).

In conclusion, Plaintiff asserts he went through "mental, physical and emotional hell not knowing to what extent [the] fall had damaged [his] neck," and that Defendants' "deliberate disregard of the risk to more serious damage of [his] injuries has permanently affected [his] life" (doc. 31 at 8). All of this, Plaintiff asserts, "could have been completely avoided if [Defendants] had only taken appropriate documentation presented at the time of incarceration" (*id.*).

### PLAINTIFF'S CLAIMS

Plaintiff claims he has been denied adequate medical care in violation of the Eighth Amendment and that he was subjected to forty-seven days in disciplinary confinement in violation of the Fourteenth Amendment (doc. 31 at 7). Additionally, liberally construing Plaintiff's claims, the court concludes he asserts a retaliation claim as to Defendant Clark under the First Amendment (*see id.* at 7–8). As relief, Plaintiff seeks $1,000,000.00 for "pain and suffering" for each day he spent in confinement, payment for current and future medical bills, and establishment of a fund to educate medical staff within the Department of Corrections regarding "how to work with disabled inmates" (*id.*).

### Eighth Amendment Claim

---

[5] Plaintiff states in the second amended complaint that he received a copy of the original and revised "Charging Disciplinary Reports" that led to his initial seventeen-day and subsequent thirty-day confinements, and he states he received the reports on June 29, 2009 (original), and July 7, 2009 (revised) (doc. 26, statement of facts at 6–7). It is unclear, however, when he received these reports in relation to when his terms of confinement were imposed (*see id.*; *see also* doc. 31 at 7–8).

Case No. 3:09cv500/MCR/EMT

Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id*. (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)). Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, with respect to medical claims, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. at 298) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235,

1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

Regardless of whether Plaintiff has been deemed "disabled" for purposes of a Social Security determination, for purposes of an Eighth Amendment claim he must show that Defendants' conduct was, objectively speaking, "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" Taylor, 221 F.3d at 1257. Thus, although the Social Security Administration ("SSA") may have determined that Plaintiff was disabled prior to his incarceration, its determination does not establish that Plaintiff's condition warranted a particular course of medical treatment within the DOC or a total restriction from prison work duty. Indeed, to require Neives (or any other Defendant) to accept as controlling the disability finding by the SSA, such that Neives would be required to restrict Plaintiff from prison work duty, would effectively require Neives to have knowledge of Plaintiff's physical condition and an understanding of the nuances of how the SSA's regulations analyze physical limitations with respect to job experience, age, education, transferability of job skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.

Additionally, the facts alleged by Plaintiff establish that Neives did not altogether ignore Plaintiff's complaints. Rather, the facts show that Neives provided Plaintiff with pain medication and assessed lifting, pushing, and pulling restrictions following their initial meeting on April 20, 2009. Moreover, when Plaintiff returned to Neives after his fall, on May 28, 2009, she administered an injection, returned Plaintiff to his dormitory instead of his work duty, and restricted Plaintiff from work and recreation from May 28 through June 1, 2009. Although Neives did not refer Plaintiff to a physician or order x-ray or MRI testing as Plaintiff requested, Plaintiff has not established that she was deliberately indifferent to a serious medical need. A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where—as here—the inmate has received

medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted). Plaintiff has therefore failed to state an actionable Eighth Amendment claim against Defendant Nieves.

As to Defendant Rummel, his review of Plaintiff's 2008 MRI, and subsequent denial of Plaintiff's grievance, suggest that he—like Neives—concluded that Plaintiff's pre-incarcerative condition did not preclude him from performing work duty at the SRCIA, did not require a physical examination or MRI testing, and did not require a different course of medical treatment. Stated another way, the denial suggests that Rummel believed Neives responded appropriately when she initially met with Plaintiff in April 2009, prior to Plaintiff's work duty assignment and subsequent work duty injury. Additionally, the 2008 MRI—obtained shortly prior to Plaintiff's incarceration at the SRCIA—was appropriately considered by Rummel in evaluating Plaintiff's medical condition and grievance. Although Plaintiff alleges that Rummel subsequently denied all of his grievances, including those in which he claimed inadequate medical treatment related to his work duty fall, these denials again merely evidence Rummel's agreement with the course of treatment provided by Neives. On these facts, the court concludes that Plaintiff's grievances did not alert Rummel to the existence of a serious medical need that was left unattended. In other words, the grievances did not establish that Nieves' course of treatment posed a substantial risk of serious harm to Plaintiff, such that Rummel's failure to intervene or change her treatment course (e.g., by conducting a physical examination or ordering MRI testing) constituted an unnecessary and wanton infliction of pain. Accordingly, Plaintiff has failed to state an actionable Eighth Amendment claim against Rummel.

Plaintiff has also failed to state an Eighth Amendment claim against Defendant Clark. Plaintiff alleges that when he appeared at the medical department on June 22, 2009, Clark advised him to wait in the waiting room so he could be seen by a physician. Thereafter, Plaintiff alleges, a guard—not Clark—instructed Plaintiff to return to his dormitory. Although Plaintiff alleges that Clark falsely accused him of failing to obey her order, and that he was arrested when he returned

to the medical department, his facts do not establish, or even suggest, that Clark was responsible for the denial of medical care during his subsequent administrative confinement.

Finally, Plaintiff must allege, but has not adequately alleged, that Neives, Rummel, or Clark possessed a subjective intent to use medical deprivation as a means to punish him. Taylor, 221 F.3d at 1257 (citations omitted). Absent such allegations, Plaintiff is unable to establish an Eighth Amendment medical claim. At most, it appears that Plaintiff's allegations that he was denied physical examinations, x-rays, MRIs, or a permanent excuse from working in the prison implicate a claim of negligence or medical malpractice. And the proper forum for such claims is state court. For all these reasons Plaintiff has failed to state an actionable Eighth Amendment claim against the Defendants.

Fourteenth Amendment Claim

Plaintiff asserts a due process claim in connection with the disciplinary matters in which he apparently spent a seventeen-day and thirty-day term in administrative confinement. A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. *See* Sandin v. Conner, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). The Supreme Court has provided examples of cases covered by the first situation, that is, in the prison context where the Due Process Clause protects a liberty interest regardless of the protections state law provides or fails to provide. Sandin, 515 U.S. at 483–84. One such case involved an inmate's involuntary transfer to a mental hospital, and another involved the involuntary administration of pyschotropic drugs to an inmate. *Id.* (citations omitted). In these situations, the conditions of confinement "exceed[ed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* at 484. The second situation involves instances where state law has created a liberty interest, such as where the state has consistently bestowed a certain benefit to prisoners—usually through statute or administrative policy—and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483–84 (under certain circumstances states may create liberty interests protected by the Due Process Clause, but such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *see also* Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process). In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state. Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

Here, Plaintiff has failed to establish a deprivation of a liberty interest that arises from the Due Process Clause itself. This failure exists whether Plaintiff's terms of disciplinary confinement are considered as two, separate terms of seventeen-day and thirty-day confinements, *see* Sandin, 515 U.S. at 485 (where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach), or whether the terms are considered together as one, forty-seven-day confinement, *see* Rodgers v. Singletary, 142 F.3d 1252, 1252–53 (11th Cir. 1998) (plaintiff failed to show he was deprived of a constitutionally protected liberty interest, "as defined in Sandin," based on his placement in administrative confinement "for approximately two months"); Al-Amin v. Donald, 165 Fed. Appx. 733 (11th Cir. 2006) (unpublished)[6] (thirty-month administrative confinement not violative of due process where conditions are substantially similar to conditions of general population); Pray v. Brown, No. 5:04cv110/SPM/AK, 2006 WL 1653352, at *9 (N.D. Fla. June 6, 2006) (sixty-day administrative confinement "cannot show deprivation of a protected liberty interest") (citing Sandin, Rodgers, and Al-Amin). *See also* Skinner v. Cunningham, 430 F.3d 483, 487 (1st Cir. 2005) (holding that a liberty interest was not implicated because, among other reasons, the duration of the plaintiff's (approximate) six-week segregation, without a hearing, "was not excessive"); Lekas v. Briley, 405 F.3d 602, 612 (7th Cir. 2005) (ninety-day disciplinary segregation with severe restrictions on exercise, group worship, work, and educational opportunities not atypical or significant); Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (noting that a relevant factor is "the duration of the condition"); Sealey v. Giltner, 197 F.3d 578, 587–89 (2d Cir. 1999) (finding no implicated liberty interest in being placed in administrative segregation for an aggregate interval

---

[6] The undersigned cites Al-Amin only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* U.S. Ct. of App. 11th Cir. Rule 36-2, 28 U.S.C.A.

that reached 101 days); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (no liberty interest implicated as to six months of administrative segregation); Stephens v. Cottey, 145 Fed. Appx. 179, 181 (7th Cir. 2005) (unpublished) ("In determining whether prison conditions meet this [Sandin] standard, courts place a premium on the duration of the deprivation . . . ."); *cf.* Magluta v. Samples, 375 F.3d 1269, 1275 (11th Cir. 2004) (plaintiff's allegations as to conditions during administrative detention in excess of 500 days—including that his cell was "closet-size," he was unable to communicate with other prisoners, meals were pushed through the cell door on trays, and while he was allowed limited social or legal visits, he was not permitted to have a job, participate in religious services, or attend educational classes, and he had no periodic reviews of his confinement status—sufficiently atypical to establish a liberty interest for purposes of entitlement to procedural due process) (citing Sandin, 515 U.S. at 472); Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (noting that a relevant factor is "the amount of time the prisoner was placed into disciplinary segregation" and stating that "we have no difficulty concluding that eight years in administrative custody . . . is 'atypical' [and significant] in relation to the ordinary incidents of prison life").

  Second, Plaintiff has failed to establish that a state-created liberty interest exists in relation to his confinement. He has not alleged, nor do the facts suggest, that he lost good-time credits or that his term of incarceration was otherwise lengthened as a result of his administrative confinement. Likewise, Plaintiff has not established that his short-term period of administrative confinement constituted an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. For example, Plaintiff has not alleged that he was denied adequate food, exercise, sanitation, clothing or any other circumstance that, in the court's view, would constitute an atypical and significant hardship. Indeed, Plaintiff has made no complaint at all regarding the conditions of his administrative confinement other than to complain that he did not receive proper medical care. Plaintiff, however, also complains that he did not receive proper medical care throughout his incarceration at SRCIA. Thus, the lack of medical care was not a result

of Plaintiff's administrative confinement but rather a result of decisions made by medical staff as to the type of care Plaintiff would receive, regardless of the nature of his confinement.[7]

Finally, having concluded that no state or constitutionally protected liberty interest arose in connection with Plaintiff's terms of confinement, the court need not determine whether SRCIA's procedures for confining Plaintiff to administrative segregation provided him with due process. Accordingly, Plaintiff has failed to state a claim for relief, based upon a denial of due process.

First Amendment

Finally, Plaintiff alleges Defendant Clark "deliberately stated [he had] disobeyed orders," which caused Plaintiff to be arrested and administratively confined, in order "to punish" him for writing grievances regarding the SRCIA medical department (doc. 31 at 8). Although Plaintiff alleges violations of only the Eighth and Fourteenth Amendments (*see id.* at 9), Plaintiff's claim of retaliation against Clark is properly brought under the First Amendment, which forbids prison officials from retaliating against prisoners for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.

---

[7] It is worth noting here that some courts have found no protective liberty interest in confinements of greater duration than Plaintiff's, even where the confined inmate alleged significantly harsh conditions. For example, the Fourth Circuit found in Beverati, 120 F.3d at 504, as follows:

> Inmates, however, have submitted affidavits attesting that the actual conditions in administrative segregation are more onerous than those specified in the prison regulations. They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions. Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment, we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.

Beverati, 120 F.3d at 504 (emphasis added).

Case No. 3:09cv500/MCR/EMT

1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (internal quotation and citation omitted).

Broad, conclusory, speculative allegations of retaliation—such as those alleged by Plaintiff as to Defendant Clark—are insufficient to state a claim under section 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were in retaliation for filing lawsuits and accessing the courts. Wright, 795 F.2d at 968. He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Most importantly—and conspicuously absent in the instant case—Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Plaintiff must come forward with more than "general attacks" on Clark's motivations and produce "affirmative evidence" of retaliation. Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L. Ed. 2d 750 (1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citation omitted). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." Crawford-El, 118 S. Ct. at 1596–97; Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir.

1995); *see also* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

In this case, Plaintiff has failed to allege anything beyond a personal belief that he was retaliated against by Clark, and the facts he has alleged render his personal belief implausible. Plaintiff alleges he first saw Clark on June 22, 2009, and that she took retaliatory action against him on that date. The grievances submitted by Plaintiff prior to June 22, however, did not concern the actions of Clark; they concerned the actions of Neives and/or Rummell. Absent some indication that the grievances directed toward Neives or Rummel impacted Clark, that the three Defendants acted in concert, or that Clark even knew of the grievances, Plaintiff cannot demonstrate that the grievances engendered an adversarial motive on Clark's part. *See, e.g.*, Hilliard v. Board of Pardons and Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985) (noting inmate's failure to allege any connection or concert of action by those against whom inmate complained with those that took adverse action against him) (cited favorably by Clark v. State of Ga. Pardons and Paroles Bd., 915 F.2d 636, 639 (11th Cir. 1990)). Additionally, as previously noted, Clark met with Plaintiff on June 22, 2009, after he declared a medical emergency, and she directed him to remain in the waiting room so he could be seen a physician. Her actions undermine Plaintiff's claim of retaliation because they suggest she responded appropriately to Plaintiff's declared emergency, by determining that Plaintiff warranted further evaluation by a physician. Although Plaintiff alleges that Clark falsely charged him with disobeying orders, he has not alleged that Clark prevented him from obtaining medical care during his resulting administrative confinement. For these reasons, it is clear that Plaintiff has failed to state a viable First Amendment claim.

As a final matter, the court notes that some of the relief Plaintiff seeks likely is now moot, since he has been released from custody. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." City

of Los Angeles, 461 U.S. at 102 (citation and internal quotation marks omitted).  In light of Plaintiff's release from prison, it thus appears that "meaningful relief" is no longer available with respect to his demand for an order directing the establishment of a fund to educate medical personnel within the DOC.

Accordingly, it is respectfully **RECOMMENDED**:

That this action be **DISMISSED** for the failure to state a claim for relief, pursuant to 28 U.S.C. § 1915A(b)(1).

At Pensacola, Florida this 17th day of April 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**